UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RILEY RIVERS** | * | **CIVIL ACTION NO. 17-17124** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE** |
| **REMINGTON ARMS COMPANY, LLC.,** | * | |
| **SPORTING GOODS PROPERTIES, INC.,** | * | |
| **and E.I. DU PONT NEMOURS AND** | * | |
| **COMPANY** | * | **MAGISTRATE** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

The Complaint of Riley Rivers, a person of the full age of majority and a resident of the State of Louisiana, Parish of Tangipahoa, respectfully represents:

**1.**

Made defendants are:

a) Remington Arms Company, L.L.C. ("Remington"), a Delaware corporation with its headquarters in Madison, North Carolina;

b) Sporting Goods Properties, Inc. ("SGPI"), a Delaware corporation with its headquarters in Wilmington, Delaware; and

1

c)   E.I. duPont de Nemours and Company ("DuPont"), a Delaware corporation with its principal place of business in Delaware.

**2.**

Jurisdiction is proper under 28 U.S.C. §1332, as Plaintiff and Defendants are diverse, and the amount in controversy exceeds $75,000.00.

**3.**

Venue is proper pursuant to 28 U.S.C. §1391 because the Defendant corporations are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction with respect to the action in question, and all Defendants are subject to personal jurisdiction in the Eastern District of Louisiana because they have placed the Remington 700 rifle that is the subject of this lawsuit into the stream of commerce, and those types of rifles were distributed in the Eastern District of Louisiana.   Defendants conduct substantial business in Louisiana, including the marketing, sale, and distribution of Remington firearms, and have sufficient contacts with Louisiana or otherwise intentionally availed themselves of the laws and the markets of Louisiana, so as to sustain this Court's jurisdiction over the Defendants.

**4.**

Defendant Remington was, and is now, engaged the business of designing, manufacturing, assembling, distributing, and selling firearms, and in this regard designed, manufactured, distributed, sold, and placed into the stream of commerce the Remington Model 700 rifle, Serial No. RR40763C, that caused injuries to Plaintiff.   Remington

knew and expected that the rifle would be used by consumers and around members of the general public.

**5.**

Prior to November 30, 1993, DuPont owned 100% of the stock in the company known as Remington Arms Company, Inc., now known as Sporting Goods Properties, Inc. ("SGPI").   On or about November 30, 1993, Remington Arms Acquisition Corporation, Inc. ("RACI"), purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc. (now known as SGPI), including the corporate name.   The company formerly known as Remington Arms Company, Inc. changed its name to Sporting Goods Properties, Inc., and RACI changed its name to Remington Arms Company, Inc.   SGPI retained certain non-income producing assets, some with significant environmental and other liabilities such that its net worth was reduced to a small fraction of its former value so that SGPI may not be able to pay reasonable judgments in this and similar litigation.

**6.**

At all times pertinent to this action, SGPI and DuPont were and are the alter ego of each other and in essence constitute one legal entity in which SGPI operates as a division of DuPont.   The separate incorporation of SGPI is a sham in that it is merely a corporate veil intended to insulate DuPont from liability for products manufactured and sold by SGPI.   DuPont exerted, and currently exerts, extreme influence, complete dominion, and/or absolute control over the corporate activity and function of SGPI.   DuPont's

continued operation of SGPI as a purported separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud, and/or otherwise work an injustice on Plaintiff herein and the general public. The conduct of DuPont and/or SGPI has harmed or will harm Plaintiff and the general public, justifying piercing of the corporate veil resulting in DuPont being liable for the acts and omissions of SGPI as they are in reality one legal entity.

**7.**

Defendants Remington, SGPI, and DuPont are so intertwined contractually for the liabilities, past, present, and future, of each other that they are, in fact, one entity and therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein. The Asset Sale/Purchase Agreement transferring the assets of SGPI to Remington and various revised or supplemental agreements spreads responsibility and authority for product liability claims among the three entities as it is unclear who bears the contractual liability for this claim.

**8.**

Remington and/or DuPont expressly and impliedly agreed to assume certain debts and responsibilities, including the product liability of SGPI by the terms of the Asset/Sale Purchase Agreement as well as the continuing relationship between Remington, DuPont, and SGPI. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI.

**9.**

Remington continues in the design, manufacture, distribution, and sale of all Remington Arms product lines, including the Remington Model 700 bolt action rifle, without any significant changes. Remington maintains the same plants, employees, organization, contracts, customers, suppliers, advertising, products, and name acquired in the asset purchase. Remington acquired the entire company from SGPI through an asset/sale purchase in order to avoid and/or limit the liability resulting from an outright purchase of the stock from DuPont. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

**10.**

Remington, DuPont, and SGPI acted fraudulently with respect to the asset/sale purchase in that its purpose was to avoid and/or limit the responsibility of DuPont and/or Remington for the debts of SGPI, particularly its products liability. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

**11.**

At all times pertinent to this action, SGPI was an agent of DuPont acting in the course and scope of its agency relationship thereby making its principal, DuPont, liable for all SGPI's acts and omissions, either by exercising direct control over SGPI, or by adopting and ratifying SGI's acts or omissions.

**12.**

At all times pertinent to this action, agents of DuPont, acting within the course and scope of their agency relationship, controlled SGPI, thereby making SGPI's acts and omissions those of their principal, DuPont, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.   The coordinated actions of all Defendants constituted a civil conspiracy, making all Defendants liable *in solido*.

FACTUAL ALLEGATIONS

**13.**

The accident that is the subject of this lawsuit occurred on December 21, 2016. A Remington 700 rifle, Serial No. RR40763C, fired while the safety on the rifle was engaged.   The rifle in question was equipped with an X-Mark Pro ("XMP") trigger.

**14.**

At the time of the accident, Plaintiff was using the rifle in a reasonably foreseeable manner:   specifically, Plaintiff was holding the rifle with the safety on, and did not engage the trigger.   However, the rifle discharged, shooting off a portion of Plaintiff's foot.

**15.**

Defendants were responsible for the manufacture, distribution, and sale of the rifle.

**16.**

Prior to the accident, the rifle appeared to be in good condition and had no apparent defects.

**17.**

The rifle in question, however, was defective and unreasonably dangerous under the Louisiana Products Liability Act.

**18.**

Specifically, the rifle was unreasonably dangerous in design because the design utilized by Defendants is prone to failure in reasonably foreseeable use. At the time that the rifle was manufactured, feasible alternate designs existed which would have decreased or eliminated the risk of the unintentional discharge, but those designs were not utilized by Defendants.

**19.**

Further, the rifle was unreasonably dangerous in construction or composition because, at the time it left the control of the manufacturer/Defendants it materially deviated from the manufacturer's specifications or performance standards and/or from otherwise identical rifles manufactured by Defendants. Remington itself admitted the existence of the composition defect, stating in published materials that "Remington has determined that some Model 700 and Model Seven rifles with XMP triggers could, under certain circumstances, unintentionally discharge. A Remington investigation has determined that some XMP triggers might have excess bonding agent used in the assembly process."

**20.**

The rifle was also unreasonably dangerous because of the failure of Defendants to give an adequate warning about the dangers posed by the rifle and of the risk of failure of

the rifle in reasonably foreseeable use, even after Defendants acquired specific knowledge of those dangers.

**21.**

The rifle was also unreasonably dangerous because it failed to conform to at least one express warranty.

**22.**

Defendants were aware well before the accident that injured Plaintiff of the defects in the XMP triggers.   Nevertheless, the Defendants failed to warn users, and failed to take reasonable efforts to notify owners and users of the Remington 700 rifles equipped with the XMP triggers, of the danger, despite the fact that the Louisiana Products Liability law imposes a continuing duty to warn.

**23.**

Defendants' conduct in suppressing the information and failing to widely publicize it created an extreme danger to users such as Plaintiff.   These actions constitute a violation of La.R.S. 51:1405, and the Plaintiff has suffered a loss as a result of the use by the Defendants of unfair and deceptive methods, acts, or practices declared unlawful by the Louisiana Unfair and Deceptive Trade Practices and Consumer Protection Law ("LUTPA").   Further, the actions of the Defendants in this case offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious.

**24.**

As a result of Defendants' violations of LUTPA, Plaintiff is entitled to treble damages and attorneys' fees pursuant to La.R.S. 51:1405.

**25.**

As a result of the accident, Plaintiff Riley Rivers sustained personal injuries, and continues to suffer from those personal injuries, and he sustained and continues to incur damages, past and future, including but not limited to: medical and hospital expenses, physical, emotional and mental pain and suffering, loss of earnings, loss of earning capacity, mental anguish, emotional distress, loss of enjoyment of life, permanent disability, economic losses, disfigurement, scarring and other harm, injury and damage.

**WHEREFORE**, Plaintiff prays that after due proceedings be had, there be judgment in his favor and against Defendants, Remington Arms Company, L.L.C., Sporting Goods Properties, Inc., and E.I. duPont de Nemours and Company, in an amount sufficient to compensate him for the damages detailed above, together with treble damages and attorneys' fees under La.R.S. 51:1405, as well as for all costs of this action, attorneys' fees, and for all general and equitable relief.

Respectfully Submitted:

  */s/ Gary J. Gambel*
GARY J. GAMBEL (#19864)
MURPHY, ROGERS, SLOSS, GAMBEL
    & TOMPKINS
One Shell Square, Suite 400
701 Poydras Street
New Orleans, Louisiana    70139
Telephone:    (504) 523-0400
Facsimile:    (504) 523-5574

*And*

           */s/ Jennifer N. Willis*
JENNIFER N. WILLIS (#14877)
WILLIS & BUCKLEY, APC
3723 Canal Street
New Orleans, Louisiana 70119
Telephone:   (504) 488-6301
Facsimile:    (504) 488-6302

*Attorneys for Plaintiff, Riley Rivers*

**PLEASE SERVE:**

**REMINGTON ARMS COMPANY, L.L.C.**
**Through its agent for service of process:**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware     19801**

**SPORTING GOODS PROPERTIES, INC.**
**Through its agent for service of process:**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware     19801**

**E.I. DUPONT DE NEMOURS AND COMPANY**
**Through its agent for service of process:**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware     19801**