UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RILEY RIVERS                                                                          CIVIL ACTION

VERSUS                                                                                 No. 17-17124

REMINGTON ARMS COMPANY, LLC ET AL.                            SECTION I

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim filed by defendants Remington Arms Company, LLC ("Remington"), Sporting Good Properties, Inc. ("SGP"), and E.I. du Pont De Nemours & Co. ("DuPont"). For the following reasons, the motion is granted in part and denied in part.

### I.

On December 21, 2016, plaintiff Riley Rivers ("Rivers") was handling a Remington 700 rifle equipped with an X-Mark Pro ("XMP") trigger, when the rifle allegedly discharged despite the safety mechanism being engaged.[1] The shot caused serious injury to Rivers' foot.[2]

On December 12, 2017, Rivers filed the present lawsuit asserting claims under the Louisiana Products Liability Act[3] ("LPLA") and the Louisiana Unfair Trade

---

[1] R. Doc. No. 1 ¶ 13.
[2] *See id.* at ¶ 14.
[3] *Id.* at 17–21.

Practices Act[4] ("LUTPA"). The complaint also makes passing references to fraud[5] and civil conspiracy.[6]

With respect to the LPLA, Rivers alleges design defect,[7] manufacturing defect,[8] inadequate warning,[9] and express warranty claims.[10] Under the LUTPA, Rivers claims that Remington, SGP, and DuPont suppressed information regarding the alleged defects and failed to widely publicize said information, creating danger to the rifles' users.[11] Rivers' LUTPA claim includes a demand for treble damages and attorney's fees.[12]

Remington, SGP, and DuPont now move to dismiss all of Rivers' claims against them. They argue that Rivers' LUTPA claim, as well as any claim he may have asserted for fraud and civil conspiracy, are barred by the LPLA's exclusivity provision. They further maintain that Rivers has failed to sufficiently plead a claim under the LPLA.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a district court to dismiss a complaint, or any part of it, when a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*,

---

[4] *Id.* at ¶ 22–24.
[5] *Id.* at ¶ 6, 10.
[6] *Id.* at ¶ 12.
[7] *Id.* at ¶ 18.
[8] *Id.* at ¶ 19.
[9] *Id.* at ¶ 20.
[10] *Id.* at 21.
[11] *Id.* at 23.
[12] *Id.* at 24.

2

550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Where "the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course. *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

### III.

### A.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. § 9:2800.52. Consequently, a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth" in the LPLA. *Id.* This

3

exclusivity "is well-established in both the statute and its attendant case law." *Bracey v. C.B. Fleet Holding Co., Inc.*, No. 6-3238, 2006 WL 3733808, at *2 (E.D. La. Dec. 15, 2006) (Africk, J.); *see also Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) ("Louisiana law eschews all theories of recovery in this case except those explicitly set forth in the LPLA.").

Rivers' claims under the LUTPA and any claims for fraud and civil conspiracy, therefore, must be dismissed. *See Pramann v. Janssen Pharmaceuticals, Inc.*, No. 16-12413, 2017 WL 58469, *2 (E.D. La. Jan. 5, 2017) (Africk, J.) (dismissing all claims outside of the LPLA); *Bracey*, 2006 WL 3733808, at *2 (rejecting as "unpersuasive" plaintiffs' arguments that, because the LUTPA offers remedies distinct from those available under the LPLA, LUTPA claims should be allowed to proceed alongside LPLA claims); *Ingram v. Bayer Corp.*, No. 2-352, 2002 WL 1163613, at *2 (E.D. La. May 30, 2002) (Porteous, J.) ("Plaintiff's causes of action . . . are limited to those expressly available under the LPLA. The LPLA does not allow the plaintiff to recover for negligence, gross negligence, strict liability, fraud, misrepresentation, concealment, conspiracy, suppression and willful, wanton and reckless conduct against [a defendant].").

Likewise, Rivers' claims for punitive damages and attorney's fees must fail. *See Cantu v. C.B. Fleet Holding Co., Inc.*, No. 6-2168, 2007 WL 689566, at *2 (W.D. La. Mar. 1, 2007) (Minaldi, J.) ("The LUTPA is penal in nature in that it allows the recovery of treble damages and attorney's fees. Punitive damages are not recoverable under the LPLA."); *see also Amer. Homes. Assur. Co. v. Oceaneering Int'l, Inc.*, 609

4

Fed. App'x 171, 174 (5th Cir. 2015) (noting that the LPLA "explicitly prohibits the recovery of attorney's fees"); La. Rev. Stat. § 9:2800.53(5) ("Attorneys' fees are not recoverable under this Chapter.").

**B.**

Rivers' only remaining claims fall under the LPLA. Remington, SGP, and DuPont argue that these claims should also be dismissed, because Rivers' allegations are factually inadequate to state a valid claim under the statute.

To succeed on a claim under the LPLA, a plaintiff must prove four elements:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002); *see also* La. Rev. Stat. § 9:2800.54(A). "The plaintiff must carry his burden of showing that a product was unreasonably dangerous through one of four theories: (1) defective design; (2) defective construction or composition; (3) because of an inadequate warning; or (4) because of a breach of express warranty." *Flagg v. Elliot*, No. 14-852, 2014 WL 3715127, at *4–5 (E.D. La. June 26, 2014) (Feldman, J.); *see* La. Rev. Stat. § 9:2800.54(B). Rivers' asserts claims under all four of the aforementioned theories.

Liberally construing the allegations in the complaint in Rivers' favor, the Court concludes that Rivers has met his pleading burden with respect to his manufacturing defect and inadequate warning claims. However, he has failed to allege sufficient facts to support his design defect and express warranty claims.

5

### i.

To recover under the LPLA on a theory of manufacturing defect, a plaintiff must show that:

> (1) the product is unreasonably dangerous because it deviated in a material way from the manufacturer's specifications or performance standards; (2) the defect existed at the time the product left the manufacturer's control; and (3) the defect was a proximate cause of the plaintiff's injuries.

*Thibodeaux v. Ford Motor Co.*, 54 Fed. App'x 591, 591 (5th Cir. 2002) (citing La. Rev. Stat. §§ 9:2800.54, 9:2800.55).

Rivers' complaint alleges that "the rifle was unreasonably dangerous in construction or composition because, at the time it left the control of the manufacturer/[d]efendants it materially deviated from the manufacturer's specifications or performance standards and/or from otherwise identical rifles manufactured by [d]efendants."[13] Rivers further contends that the composition defect relates to the XMP trigger, which may have been manufactured using excess bonding agent and which can, under certain circumstances, unintentionally discharge.[14] Hence, Rivers has identified an allegedly defective condition in the composition of the rifle, and he has asserted that this condition proximately caused his injury by causing the rifle to discharge without the trigger being pulled and with the safety mechanism engaged. These allegations suffice to state a manufacturing defect claim under the LPLA. Dismissal of such a claim would, therefore, be inappropriate.

---

[13] *Id.* at 19.
[14] *Id.*

### ii.

Similarly, Rivers has pled a valid inadequate warning claim. Under the LPLA,

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. Rev. Stat. § 9:2800.57.

According to Rivers' complaint, Remington published materials in which it admitted that some of the XMP triggers might have been manufactured using excess bonding agent and that the weapon could discharge unintentionally.[15] Rivers alleges that Remington, SGP, and DuPont "acquired specific knowledge" of this risk and failed to give adequate warnings to purchasers of the rifle. If taken as true—as they must be at the motion to dismiss stage—these allegations, though minimal, are enough to state a claim under the LPLA. Thus, dismissal of this is likewise unwarranted.

### iii.

By contrast, Rivers' design defect allegations offer little more than labels and conclusions. The LPLA provides that "[a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

---

[15] *Id.*

> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. Rev. Stat. § 9:2800:56. Thus, "[t]o state a claim for unreasonably dangerous design, the plaintiff must (1) allege how the design is defective or how the design relates to the injury and (2) demonstrate the existence of a specific alternate design." *Robertson v. AstraZeneca Pharm., LP*, No. 15-438, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015) (Barbier, J.). "The occurrence of an injury does not give rise to the presumption that the design was unreasonably dangerous." *Id.* "A conclusory allegation that an alternate design exists will not suffice." *Id.*

Rivers' complaint states that "the rifle was unreasonably dangerous in design because the design utilized by [d]efendants is prone to failure in reasonably foreseeable use." Rivers further alleges that "[a]t the time that the rifle was manufactured, feasible alternate designs existed which would have decreased or eliminated the risk of the unintentional discharge, but those designs were not utilized by [d]efendants." That is the full extent of Rivers' design defect claim.

Rivers does not allege any facts relating to a viable alternative design; he simply declares that one exists. Such threadbare assertions, however, are insufficient to state a claim under the LPLA. *Cf. Becnel v. Mercedes-Benz USA, LLC*, No. 14-3, 2014 WL 445031, at *4 (E.D. La. Sept. 10, 2014) (Barbier, J.) ("Plaintiff does not merely state in a conclusory fashion that an alternative exists; rather, he identifies

8

that alternative design as the system the Airmatic replaced."). Rivers' design defect claims require dismissal.

### iv.

Finally, Rivers' express warranty claim is nothing more than boilerplate that is devoid of factual support. The only reference to the claim is when Rivers states that "[t]he rifle was also unreasonably dangerous because it failed to conform to at least one express warranty." Rivers does not allege what warranty, if any, was made to him, nor does he explain how the rifle failed to conform such warranty. This single conclusory allegation does not state an express warranty claim under the LPLA, and it cannot survive this motion dismiss.

### IV.

Rivers has pled sufficient facts to sustain his manufacturing defect and inadequate warning claims at this early stage in the litigation. His design defect and express warranty claims, on the other hand, are inadequate.

Accordingly,

**IT IS ORDERED** that Remington, SGP, and DuPont's motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Rivers' claims under the LUTPA as well as any claims for fraud, civil conspiracy, treble damages, and attorney's fees are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Rivers' design defect and express warranty claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Remington, SGP, and DuPont's motion with respect to Rivers' composition defect and inadequate warning claims is **DENIED**.

New Orleans, Louisiana, February 7, 2018.

                                              **LANCE M. AFRICK**
                                   **UNITED STATES DISTRICT JUDGE**